COMMONWEALTH OF MASSACHUSETTS
BOARD OF BAR OVERSEERS

BBO File No. C2-17-00247608 (Marsha V. Kazarosian, Esq.)

BAR COUNSEL,

     Petitioner

v.

LISA SIEGEL BELANGER, ESQ.,

     Respondent

BRIEF ON APPEAL

STATEMENT OF THE CASE

The *sole* reason for the petition filed by Bar Counsel on **May 25, 2018** against Respondent Attorney Lisa Siegel Belanger (herein referred to as "Attorney Belanger") is because of an initiating complaint filed by Complaint Attorney Marsha V. Kazarosian[1]. In addition to the documentary evidence of Attorney Kazarosian's filed complaint itself, Assistant Bar Counsel Adam LaFrance has outright acknowledged Attorney Kazarosian's role as complainant. (TR Vol 1 at 163).

---

[1] Joined by other counsel (Attorneys Cuffe, Feld, Barber et al ) involved in the matters of In re Marvin H. Siegel (ES11P1466GD & ES11P1465PM).

1

**<u>Pre-hearing</u>**

Undersigned counsel filed her timely Answer & Affirmative Defenses. Ten (10) exhibits accompanied said filing, consisting of:

- Exhibit 1 – Affidavit of Diane Long, Esq. dated May 27, 2011

- Exhibit 2 – 2003 Durable Power of Attorney

- Exhibit 3 – Attorney Garmil's petition filed with the Haverhill District Court

- Exhibit 4 – Elder Services of Merrimack Valley filed motion to intervene dated August 2, 2011

- Exhibit 5 – Affidavit of Attorney Marsha Kazarosian dated August 17, 2011

- Exhibit 6 – Invoice by Attorney Marsha Kazarosian

- Exhibit 7 – Attorney Marvin H. Siegel's handwritten faxed termination of Attorney Kazarosian's legal services

- Exhibit 8 – Email sent by Attorney Kazarosian refusing to terminate her services

- Exhibit 9 – August 17, 2011 transcript

- Exhibit 10 – email correspondence with Attorney Kazarosian

- Exhibit 11 – 2015 federal civil complaint and accompanying specified documentation regarding Belanger v. BNY Mellon et al.

- Exhibit 12 – Table of Contents for the 2015 federal complaint

- Exhibit 13 – Table of Exhibits for the 2015 federal complaint

- Exhibit 14 – relevant hardcopy portions of the 2015 federal complaint establishing the invalidity of the guardianship and conservatorship

- Exhibit 15 – relevant hardcopy portions of the 2015 federal complaint establishing the invalidity of court orders relied on by Bar Counsel in its petition

- Exhibit 16 – original petition for writ of certiorari filed with the U.S. Supreme Court

Undersigned counsel filed a motion for bill of particulars, demonstrating that Bar Counsel's petition did not comport with the due process requirements pertaining to sufficiency of notice, followed by written opposition by Bar Counsel.  The Chairman denied undersigned counsel's motion with a one-word decision: "denied".  She failed to provide any explanation or justification for said denial.

Undersigned counsel objected to said denial at the beginning of the first day of the hearing (Tr I at 5)[2] and at the beginning of the second day of the hearing (Tr II at 5-6).

In addition, undersigned counsel filed a motion for discovery.  One of undersigned counsel's primary defense is that Bar Counsel's petition is tainted based on substantiated

---

[2] "Tr Vol I__" refers to the transcript for the January 8, 2019 proceedings and "Tr Vol II" refers to the transcript for January 9, 2019.

documentation of Complainant's ill-motives through her very own filed complaint.  Attorney Kazarosian's established long history serving in an official capacity with the Board of Bar Overseers is undisputed, establishing the relevance and materiality of Bar Counsel's investigation file.  Bar Counsel filed a written opposition.  And again, the Chairman provided a one-word denial.  No explanation provided.

Undersigned counsel filed a motion to *exclude* the Committee's use of the Probate & Family Court Orders set forth in Bar Counsel's petition[3].  Respondent's request was based on demonstrating that said orders were invalid due to deprivations of a full and fair opportunity for Respondent to present evidence and to present a meaningful and full presentation of her case.[4]

Respondent requested in writing a copy of electronic audio recordings of the held pre-trial conference; upon which June Risk, on behalf of the Board of Bar Overseers, informed

---

[3]  Specific to orders specified in Bar Counsel's petition: August 17, 2011; November 8, 2011; October 22, 2012; December 12, 2011; January 30, 2012; January 15, 2016; May 19, 2016; and February 17, 2017.

[4]  As established by the motion itself, on page 2 of the Hearing Report, Chairman and Committee misstated undersigned counsel's premise and argument.

undersigned counsel stating that there are no recordings.  There was no stenographer in attendance.

**Hearing**

The Hearing Committee permitted an independent 3rd-party video recording of the two-day proceedings.  (Tr. Vol I at 3-4; Tr Vol II at 3; written order by Hearing Chairman).

Prior to the commencement of Bar Counsel's witness examination, undersigned counsel specifically raised the conflict of interest issues existing within the administrative hearing process—after Complainant Attorney Kazarosian having filed her complaint with Bar Counsel, she had been appointed to sit—and continues to sit—on the Board of Bar Overseers.[5]  (Tr Vol I at 6-7).

Undersigned counsel further brought to the attention of the Hearing Committee the compounded and prejudicial conflict of interest issue regarding the Board of Bar Overseer's Chair (John J. Morrissey)  and Vice Chair (Jeffrey R. Martin)[6] having been

---

[5]  Additional conflict of interest regarding Complainant Attorney Kazarosian involves her 6-year term sitting as a hear officer for the Board of Bar Overseers.  (Id. at 6).

[6]  Additional conflicts of interests regarding Vice Chair Jeffrey R. Martin is that fact that now is managing partner at Burns & Levinson—directly involved with Attorney Brian D. Bixby who was a defendant in Belanger v. BNY Mellon as well as currently court-appointed Special Personal Representative in the pending Estate Administration of Marvin H. Siegel.

defense counsel in the very underlying crux of the Bar Counsel's petition: undersigned counsel's 2015 federal civil action of Belanger v. BNY Mellon et al. (Id. at 7). Facts which were in no way refuted by the HearingCommittee, Assistant General Counsel for the Board of Bar Overseers (Merle Haas), or Assistant Bar Counsel Adam LaFrance.

Assistant Bar Counsel called one witness only: Respondent Attorney Belanger. (Tr Vol I, 1-73). Assistant bar Counsel completed his full questioning of undersigned counsel by 12:30 p.m. on the first day of the hearing. (Id. at 73). Prior to breaking for lunch, Assistant Bar Counsel stated: "Thank you, Madam Chair, Committee. No further questions." Id.

Upon return from lunch, Hearing Committee continuously examined undersigned counsel from 1:30 p.m. until 4:00 p.m. (Tr Vol I at 1-159).

Despite undersigned counsel having timely filed her witness list, Hearing Chairman and Committee refused to allow undersigned counsel to call Complainant Attorney Marsha Kazarosian as a witness for her defense-in-chief. (Tr Vol I at 160-168). Hearing Chairman explicitly stated that the *only* scope of questioning allowed of Complainant Attorney Marsha

_____

Kazarosian by undersigned counsel would be of Attorney Kazarosian testifying to *undersigned counsel's* state of mind". Id. at 165-167.

Despite undersigned counsel specifically objecting to the Hearing Committee's ruling, the Chairman characterized undersigned counsel's objection as being a "withdrawal" of her motion to subpoena Complainant Attorney Kazarosian. (Id. at 167.) Undersigned counsel adamantly stated that she was not withdrawing her motion, yet, the Chairman still characterized it as the motion being "withdrawn". (Id. at 167).

At the onset of the second day of the hearing (January 9, 2019), undersigned counsel renewed her objection to the HearingvCommittee's ruling regarding the very narrowly limited scope of questioning and to the characterization of the motion to subpoena witness as being "withdrawn". (TR Vol II at 2-4).

Undersigned counsel further renewed her objections regarding being precluded from being able to present a full and complete defense. (Id. at 4-6). In addition, undersigned counsel specifically objected to the unprofessional and unethical manner in which the Hearing Chairman and Committee questioned undersigned counsel and their blatant disregard of numerous substantial conflicts of interest (Id. at 4-7).

Undersigned counsel, on multiple occasions, requested that the fees be waived for her to obtain the transcripts of the two-day hearing due to lack of financial resources[7], which General Counsel Joseph Berman repeatedly denied such request—despite the fact that "pro bono" defense counsel was offered to undersigned counsel by Chairman of the Hearing Committee at the pre-trial conference proceeding.  It has been about ten (10) days that undersigned counsel finally managed to obtain funds for the transcripts.

## SUMMARY OF RESPONDENT'S POSITION

This case stands for: the fix is in—which is well substantiated by: the prevalent unjustified character assassination statements replete in the Hearing Report—parroted from Complainant Attorney Kazarosian; overwhelming hinderance by Hearing Chairman and Committee for undersigned counsel to present a full and complete defense to Bar Counsel's petition; numerous indisputable misstatements set forth in the Hearing Report; significant omissions of fact from the Hearing Report adverse to Bar Counsel's petition; reckless disregard of

---

[7]  Hearing Committee acknowledged in its Hearing Report that undersigned counsel raised the issue about not being able to financially obtain the transcripts.  (Hearing Report, page 4).

conflicts of interest; and incessant disruption by Chairman and Committee of undersigned counsel's answering questions.

**GROUNDS FOR APPEAL**

From the inception of proceedings commenced by Bar Counsel in the above captioned matter, such proceedings have violated undersigned counsel's State and Federal Constitutions' guarantee to a fair and impartial tribunal process pursuant to the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article Ten and Twelve of the Massachusetts Declaration of Rights—specifically, Respondent Attorney Belanger has been deprived of fair notice of allegation; deprived of a fair and full opportunity to present a complete defense; deprived of a fair and impartial trier of facts.

**ARGUMENT**

**I. Material and prejudicial misstatements in Hearing Report**

**Hearing Committee misstated that evidentiary hearings were held on August 17, 2011; December 12, 2011; and contempt proceeding of January 30, 2012**

At the above-specified hearings, the transcripts irrefutably establish that no evidentiary hearings took place. There were no witness examination by counsel; no cross-

9

examination of any witness; no examination of documentary evidence; and no examination of affidavits.  The sole manner of the above-referenced hearings involved arguments made by counsel.  It is well-settled law that arguments or representations made by counsel does NOT constitute evidence. Commonwealth v. Olmande, 84 Mass. App. Ct. 231 (2013).

Not only does the Committee's repeated misstatements regarding supposed evidentiary hearings[8] disconcertingly raise questions about knowledge of basic legal tenets, they egregiously berated undersigned counsel for properly substantiated assertions.

### Hearing Committee stated that undersigned counsel sought court-ordered antipsychotics

In paragraph numbered 5 (page 5) of the Hearing Report, the Committee prejudicially misstated that undersigned counsel was the one who sought court ordered antipsychotic drugging of her father.  Not only do the transcripts of December 12, 2011 and January 30, 2012 indisputably prove such statement to be untrue, said transcript show that undersigned counsel was the one complaining that her father was being forced drugged!

Egregiously, the Hearing Committee disregarded the

---

[8] pages 7, paragraph numbered 24 (page 11).

extensive incriminating representations by Attorney Cuffe showing that he outright committed a criminal offense by drugging undersigned counsel's father through concealed means.

Definitively, the court record shows that the petitions for court-ordered antipsychotics were filed by *Attorney Cuffe*.

**Findings made by Hearing Committee based on mere allegations—not based on cross-examined testimony**

The following findings in the Hearing Report are invalid based on such statements consisting of mere allegations made in complaints or mere submission of affidavits that were not subjected to type of evidentiary hearing process to challenge veracity:

- Paragraph 10, page 6

- Paragraph 11, pages 6-7

- Paragraph 13, page 7

- Paragraph 14, page 8

- Paragraph 15, page 8

- Paragraph 16, pages 8-9

- Paragraph 17, page 9

- Paragraph 19, page 9

- Paragraph 22, page 10

**Misstatements made by Hearing Committee regarding
undersigned counsel's actions regarding the 2003 DPOA**

At no time did any of the courts hold any evidentiary
hearings to determine what role the 2003 DPOA played in decision
making regarding undersigned counsel's father.  Contrary to the
perceptions alleged by the Hearing Committee on pages 12-13 of
the Hearing Report, undersigned counsel continued to re-assert
her request for relief because of the courts' refusal to
litigate the issue—let alone address it!

This is by no means an exhaustive list of misstatements and
misrepresentations made by Hearing Counsel.  Undersigned counsel
reserves the right to supplement.

## II. Established bias by Hearing Committee

Impartial "judicial" decision-making has been a cornerstone
principle dating back to the Declaration of Independence.

Caperton v. A.T. Massey Coal Co., 550 U.S. 556, 883-884 (2009)
establishes that when "a risk of actual bias or prejudgment" is
demonstrated due process has been violated.

**Hearing Committee knowingly and deliberately relied on
tainted written decision by Judge Allison Burroughs to
maliciously and unjustifiably character assassinate
undersigned counsel**

In paragraph numbered 50, page 19 of the Hearing Report, the Hearing Committee quoted Judge Allison Burrough's written attack against undersigned counsel regarding "rambling, incoherent allegations, inappropriate arguments . . ." What the Hearing Committee fails to state in the Hearing Report is the detailed factual information showing the tainted written decisions of Judge Burroughs due to an undisclosed conflict of interest of having been co-counsel with Attorney George Berman. (Exhibit 16 of Respondent's Answer & Affirmative Defenses, pages 26-29); in addition to the same information provided in detailed testimony by undersigned counsel early on during the first hearing day. (Tr I at 27-31).

With the above-described knowledge of the Hearing Committee as to the tainted opinions of Judge Allison Burroughs, the Committee continuously and repeatedly made baseless blanket and generalizations that undersigned counsel was incoherent and irrational throughout the Hearing Report:

- paragraph numbered 22, page 10: "She admitted the charges and gave an unconvincing rationale for her behavior."

- Paragraph numbered 24, page 11: "We asked her about this at the disciplinary hearing. Her responses were vague and off the mark.

- Paragraph numbered 26, page 11: "Based on the respondent's demeanor and her dissembling before us. . . ."[9]

- Paragraph numbered 37, page 14: "Given the opportunity to explain her actions to us, she was unable to offer coherent rationale, often falling on vague and ill-defined due process claims."

- Paragraph 40, pages 15-16: "We asked the Respondent what she had relied on in making this claim.  She gave a jumbled rendition of the underlying Probate Court proceedings, but was unable to point to any actual evidence that she relied on."

- Paragraph 46, page 17: "We find that the respondent did not have an objectively reasonable basis for making this claim."

- Paragraoh 48, pages 17-18: "Apprised of this, the respondent was unable to point to any specific, coherent evidence. . . ."

- Paragraph 49, page 18: "This speculative, extra-record material is not only incoherent, it is not sufficient to show that the respondent had an objectively reasonable basis for her allegations."

---

[9]  The video of the two-day hearing proves otherwise.

- Paragraph 52, page 20: "As described above, she was unable to point to any actual bases for or evidence in support of , her statements . . . ."

In particular, the third-party video—which has been provided to the Board—overwhelmingly shows that the above-descriptions by the Hearing Committee are patently false. The video and the transcripts show that, in reality, the Hearing Committee incessantly interrupted undersigned counsel obstructing her answers. There are so many examples, there are too many to list.

In addition, undersigned counsel's responsive filings and motions filed in this above-captioned matter—already specified above—refute the Hearing Committee's attempt to paint a picture of undersigned counsel being "incoherent", "vague" and other disparaging descriptors.

**Material and prejudicial omissions in the Hearing Report adverse to Bar Counsel's case**

- Failure to note that Attorney Cuffe and Feld refused to testify at the trial of permanent guardianship and conservatorship of their suitability—valid subpoenas quashed by Judge Abber.

- Manner in which Attorney Kazarsosian was terminated by Attorney Marvin H. Siegel.

### III. Hearing Committee wrongfully deprived Respondent Attorney Belanger of her right to present a full and complete defense

For brevity and to avoid redundancy, undersigned counsel relies on her filed Answer & Affirmative defenses, motion for discovery, motion for bill of particulars and opposition to Bar Counsel's motion for issue preclusion which describe in detail how the Hearing Committee has improperly obstructed undersigned counsel from presenting her major defenses that the underlying court orders were unlawful and tainted from inception; and that the Bar Counsel's petition was unlawfully tainted by illicit motives and actions of Complainant Attorney Kazarosian.

Undersigned counsel's specified motions demonstrate that the investigation records go to the very core of being able to prove the defense that Attorney Kazarosian initiated the filed complaint for the mere purpose to retaliate for undersigned counsel publicly exposing her exploitation of undersigned counsel's elderly father.

WHEREFORE, undersigned counsel requests a hearing before the Board; that the Hearing Report be deemed invalid; and that all disciplinary proceedings be terminated, with prejudice.

/s/ Lisa Siegel Belanger, Esq.

_____

Lisa Siegel Belanger, Esq.
BBO 633060
300 Andover Street, No. 194
Peabody, MA  01960
Tel. 978.998.2342
lisa@belangerlawoffice.com

# KAZAROSIAN COSTELLO LLP

- HOME
  - **ATTORNEYS**
    - o Walter A. Costello, Jr.
    - o Marsha V. Kazarosian
    - o Janet E. Dutcher
    - o Linda M. Little
    - o Marc A. Moccia, Esq.
  - **PRACTICE AREAS**
    - o Personal Injury Law
    - o Civil Rights Litigation
      - o Criminal Law
    - o Discrimination Law
      - o Divorce Law
      - o Elder Law
    - o Business Litigation
  - **VERDICTS & SETTLEMENTS**
    - **MEDIA**
    - **NEWSLETTER**
    - **CONTACT**

# Marsha V. Kazarosian



**PARTNER**

**Location:** Haverhill, Massachusetts
**Phone:** 978 372-7758 Ext. 121
**Fax:** 978 372-9299
**Email:** marsha@kazcolaw.com

**Admitted in MA (1982) and NH (1990), US District Court for MA and NH, First Circuit Court of Appeals, and US Supreme Court.**
**Concentrating in Civil Rights Litigation, Personal Injury and Divorce and Family Law.**



Immediate past President of the Massachusetts Bar Association, Marsha V. Kazarosian has been identified as a Super Lawyers by New England Super Lawyers Magazine each year since 2006. She has been identified as one of the Top 50 Women Lawyers in MA and New England, and a Super Lawyer in Civil Rights, Personal Injury Litigation, and Family Law. In 2006, she was showcased as Massachusetts Super Lawyers Magazine's cover story, featuring her career biography and her climb to national recognition. Attorney Kazarosian has a 10.0 Superb rating from AVVO.com and a Martindale Peer Review Rating of AV Preeminent.

In January 2016, Governor Baker appointed Attorney Kazarosian to serve on the Special Nominating Commission to facilitate the appointment of Justices to the Massachusetts Supreme Judicial Court. In 2015, she was appointed to the Massachusetts Supreme Judicial Court's Advisory Committee for Clerks of the Courts and she also served on the Superior Court Civil Working Group. In 2014, Attorney Kazarosian was appointed by Governor Deval Patrick to the Commission to Study Compensation of ADA's and CPCS Staff Attorneys, and she has also served on the SJC's Access to Justice Commission Committee on the Bar Exam.

In 2014, Attorney Kazarosian was appointed by the President of the American Bar Association to serve on the ABA's Commission on Women in the Profession - Gender Equity Task Force. She also served on the ABA's Tort Trial and Insurance Practice Section Plaintiffs' Policy Task Force and has been the Massachusetts Bar Association (MBA) Delegate to the ABA since 2013. In 2012, she served on the ABA's Blue Ribbon Panel on Underfunded Courts with David Boies, counsel to Al Gore, and Theodore Olsen, former Solicitor General under President George W. Bush.

In 2016, Attorney Kazarosian was appointed by UMASS Amherst's Chancellor Kuble R. Subbaswamy to serve on the Campus Council and in 2014, she was featured in UMASS media

outreach advertising that showcased the achievements of the University's prominent graduates. She was also similarly featured in Suffolk University's outreach campaign as an accomplished graduate of Suffolk University Law School.

Honored twice by Massachusetts Lawyers Weekly as a "Top Woman in the Law" for her accomplishments in the legal field and for making tremendous strides in the profession, on October 27, 2016, Attorney Kazarosian will be inducted into MLW's Circle of Excellence for being a role model and leader in the legal community. She has also been named by MLW as one of Massachusetts' Top Ten Lawyers, noting in that year that she had obtained one of the ten highest jury verdicts in the Commonwealth.

Attorney Kazarosian has spent her career building a nationally recognized name and practice by successfully representing clients in difficult, high profile cases; making case law on precedent-setting issues in areas such as gender and disability discrimination, SEC Whistleblower Retaliation, and police excessive force/civil rights litigation. She is also an experienced mediator in the Superior, Probate and District Courts, resolving cases of medical negligence, contract disputes, personal injury, and lender liability.



In 1999, Attorney Kazarosian and her associate, Janet E. Dutcher, Esquire, obtained a multimillion dollar verdict in a gender discrimination suit against the Haverhill Golf and Country Club; the first case of its kind to go to trial in the country. As a result of much post-trial litigation and appeals, their victory in Borne, et al. v. Haverhill Golf and Country Club, Inc. became a landmark case in the nation for gender discrimination in a country club/membership based club setting. Attorney Kazarosian continues to fight against gender discrimination and has affirmed her stature as a leading litigator in discrimination cases.

In addition to protecting the rights of women and minorities in membership-based club settings, Attorney Kazarosian continues to fight discrimination, police excessive force, and sexual harassment in the workplace. In 2016, she succeeded in the First Circuit Court of Appeals by overturning the dismissal of a case filed by her client in the US District Court in Boston when a Lawrence MA police officer raped her client while on duty. In 2001, she defeated claims of

disability discrimination in a landmark case against the manager of a racquetball club who was sued under the Americans with Disabilities Act in the case of <u>Kuketz v. Petronelli</u>.

Among her high profile criminal cases is her representation of one of the then-juvenile defendants accused of the murder of Gregory Smart in New Hampshire. The national attention of that murder case inspired tremendous media coverage including two movies; one with Helen Hunt entitled *Murder in New Hampshire, the Pamela Smart Case,* and one with Nicole Kidman entitled *To Die For*. Attorney Kazarosian has twice appeared on the Oxygen Network series <u>*Snapped*</u> relating to the Pamela Smart murder case, which has also been the subject of an episode of *American Justice*.

Attorney Kazarosian is past President of the <u>Massachusetts Academy of Trial Attorneys</u> (MATA). In June, 2002, she became the second female President in the history of the <u>Essex County Bar Association</u>, the oldest bar association in the nation. She has served a two year term as one of twenty-five lawyers in the Commonwealth first appointed to the Massachusetts Supreme Judicial Court's Pro Bono Panel, and a six year term as a Hearings Committee Officer for the Massachusetts Board of Bar Overseers.

A frequent legal commentator for WBZ radio, Fox News, and other media outlets, Attorney Kazarosian debuted as the host of her own internet radio program called The Power of Attorney with Marsha Kazarosian on the Legal Talk Network in 2005, in which she and her guests discuss relevant legal issues as they unfold in our everyday lives. The shows are available for listening and downloading at <u>The Power Of Attorney With Marsha Kazarosian</u>.

Attorney Kazarosian is active in the continuing legal education for lawyers in both MA and NH, and teaches courses in for MCLE, MBA, and MATA. She has also spoken for national organizations such as <u>The American Association for Justice</u>, (formerly ATLA), the 15th Annual NCWP Leadership Training Conference 2010, Feminist 2000 National Convention in Baltimore, MD, the Hye Achievers for the 21st Century, and the 11th Annual Armenian Bar Association meeting held in Washington, D.C.

In addition to the time that she invests in the community and in bar associations, Attorney Kazarosian shares her commitment to youth and the law by serving regularly as a Mock Trial Judge for high school, college, and law school students for Boston University, Boston College, Suffolk University, AAJ, ABA, and the MBA's High School Mock Trial Competitions. She has been the keynote speaker at the graduation ceremonies for North Shore Community College's graduating Criminal Justice students and also for the Haverhill Bar Association's Annual Law Day Celebration.

She has authored several articles and legal treatises for West Publishing, Massachusetts Continuing Legal Education (MCLE), MATA, and others, including a treatise for West's Causes of Action series entitled "Cause of Action Against Private Clubs or Associations for Sex Based Discrimination," (West Publishing Co. 2002). Her articles include, but are not limited to, "<u>Where's the Risk</u>," where she discusses insurer fraud and the New Orleans disaster, and "<u>Whatever Happened to the Right to a Fair Trial</u>," published in the Boston Business Journal.

## Admissions

- United States District Court, District of Massachusetts (June 1992)
- United States District Court, District of New Hampshire (December 1990)
- First Circuit Court of Appeals (May 2015)
- New Hampshire Bar (October 1990)
- United States Supreme Court Bar (May 1986)
- Massachusetts Bar (June 1982)

### HAVERHILL OFFICE
546 Main Street
Haverhill, MA 01830

### SALEM OFFICE
10 Federal Street, #401
Salem, MA 01970



Website by Community Communications, Inc.



# Supreme Judicial Court Justices

The Supreme Judicial Court is the state's highest appellate court. The Court consists of a Chief Justice and six Associate Justices who are each nominated and appointed by the Governor following a majority vote in the Governor's Council.

Biographies and photographs of the seven Justices of the Supreme Judicial Court follow.

## Chief Justice Ralph D. Gants

### Administered Oath July 28, 2014

Ralph D. Gants became the 37th Chief Justice of the Supreme Judicial Court in July 2014 when he was sworn in by Governor Deval Patrick. He was appointed as an Associate Justice on the Court in January 2009. Before joining the SJC, he served for more than eleven years as an Associate Justice of the Massachusetts Superior Court, and was Administrative Justice of the Superior Court's Business Litigation Session in 2008.

Chief Justice Gants was born in New Rochelle, New York in 1954. He received his B.A. from Harvard College in 1976, graduating *summa cum laude* and Phi Beta Kappa. The following year, he completed a Diploma in Criminology at Cambridge University in England. In 1980, he earned a J.D. degree, *magna cum laude*, from Harvard Law School where he was note editor of the Harvard Law Review. He began his legal career as a law clerk to United States District Court Judge Eugene H. Nickerson, and then served as a Special Assistant to FBI Director William H. Webster. He later was an Assistant U.S. Attorney in Massachusetts and Chief of the Public Corruption Unit before joining the Boston law firm formerly known as Palmer & Dodge LLP, where he practiced law until he was appointed to the Superior Court by Governor William Weld. He has taught at Harvard Law School, New England Law | Boston, and Northeastern University School of Law.

Chief Justice Gants is co-chair of the Massachusetts Access to Justice Commission. He also serves on the Board of Directors of the Conference of Chief Justices, and is chair of its Access and Fairness Committee.

Among his awards and honors are the 2017 Massachusetts Bar Foundation Great Friend of Justice Award, the 2016 Haskell Cohn Award for Distinguished Judicial Service, the Boston Bar Association Citation of Judicial Excellence, and the Suffolk Law School Public Service Award. He was also awarded honorary Doctor of Law degrees from New England Law | Boston in 2015, and the University of Massachusetts School of Law - Dartmouth in 2016. Chief Justice Gants is married with two children.

## Additional Resources

**Supreme Judicial Court Chief Justices speeches**

(/lists/supreme-judicial-court-chief-justices-speeches)

**A photograph of Supreme Judicial Court Chief Justice Ralph D. Gants**

(https://www.mass.gov/doc/a-photograph-of-supreme-judicial-court-chief-justice-ralph-d-gants/download) (JPG 493.84 KE

**A photograph of the Supreme Judicial Court Justices**

(https://www.mass.gov/doc/a-photograph-of-the-supreme-judicial-court-justices/download) (JPG 3.76 MB)

# Justice Barbara A. Lenk

## Administered Oath June 8, 2011

Honorable Barbara A. Lenk, Associate Justice, was born in Queens , New York. She received a B.A., magna cum laude, from Fordham University in 1972; a Ph.D. in political philosophy from Yale University in 1978; and a J.D. from Harvard Law School in 1979. She began her legal career in 1979 at the Boston law firm of Brown, Rudnick, Freed & Gesmer (now known as Brown Rudnick LLP), and became a partner there. Her practice focused on civil litigation, with a specialty in First Amendment matters. Justice Lenk was appointed to the Supreme Judicial Court by Governor Deval Patrick in 2011. She had previously served on the Superior Court, to which she was appointed by Governor William Weld in 1993, and on the Massachusetts Appeals Court, to which she was appointed by Governor Weld in 1995. Justice Lenk has been involved in a number of bar-related and other civic activities. She has served on the Board of Directors of the

Volunteer Lawyers Project of the Boston Bar Association; as Chair of the Board of Editors of the Boston Bar Journal; and twice as co-President of the Boston Inn of Court. Justice Lenk is Chairperson of the Flaschner Judicial Institute. She also currently serves as a Trustee of Western New England University.

## Additional Resources

**A photograph of Justice Barbara A. Lenk**

(https://www.mass.gov/doc/a-photograph-of-justice-barbara-a-lenk/download) (JPG 95.4 KB)

# Justice Frank M. Gaziano

## Administered Oath August 18, 2016

Frank M. Gaziano, Associate Justice, was appointed to the Supreme Judicial Court by Governor Charlie Baker. Born in Quincy, Massachusetts, he received his B.A. from Lafayette College in 1986, and earned a J.D., *magna cum laude*, from Suffolk Law School in 1989. He began his legal career at the Boston law firm of Foley Hoag as a litigation associate. In 1991, he entered public service as an assistant district attorney with the Plymouth County District Attorney's Office in Brockton. In Plymouth County, he prosecuted complex felony cases, including homicides, and represented the Commonwealth on appeal before the Appeals Court and the Supreme Judicial Court. In 2001, Justice Gaziano was appointed the First Assistant United States Attorney for the District of Massachusetts, where he was a member of the Organized Crime Strike Force.

Governor Mitt Romney appointed Justice Gaziano as an Associate Justice of the Superior Court in 2004. Justice Gaziano served as the Regional Administrative Justice for Plymouth County and for Criminal Business in Suffolk County. He also chaired the Supreme Judicial Court's Standing Committee on Criminal Rules and was a member of the Supreme Judicial Court's Model Homicide Jury Instruction Committee. He frequently presents educational programs for attorneys and judges on trial advocacy, evidence, criminal law, criminal procedure, and search and seizure.

A photograph of Justice Frank M. Gaziano

(https://www.mass.gov/doc/a-photograph-of-justice-frank-m-gaziano/download) (JPG 538.21 KB)

# Justice David A. Lowy

## Administered Oath August 24, 2016

David A. Lowy, Associate Justice, was appointed to the Supreme Judicial Court by Governor Charlie Baker. He earned a B.A., *cum laude*, Phi Beta Kappa, from the University of Massachusetts, Amherst in 1983, and graduated *magna cum laude* from Boston University School of Law in 1987.

Following law school, Justice Lowy became an associate in the Litigation Department of Goodwin, Procter & Hoar (1987-88 and 89-90), leaving for a year-long stint to work as a law clerk to Judge Edward F. Harrington in the U.S. District Court. He was also an assistant district attorney in Essex and Suffolk Counties (1992 -1997) and served as Deputy Legal Counsel to Governor William F. Weld (1992 -1995).

Justice Lowy was first appointed to the bench in 1997 as a District Court Judge. In 2001, Governor Paul Cellucci appointed him to the Superior Court bench.

Justice Lowy served on the Supreme Judicial Court Advisory Committee on Massachusetts Evidence Law as an Editor; the committee's work resulted in publication of the Massachusetts Guide to Evidence in 2008.

Justice Lowy's teaching positions include adjunct professorships at New England School of Law | Boston (1991- present); Suffolk University Law School (1995-2005), and Boston University School of Law (2006 - present), where he teaches courses in evidence.

## Additional Resources

A photograph of Justice David A. Lowy

(https://www.mass.gov/doc/a-photograph-of-justice-david-a-lowy/download) (JPG 485.33 KB)

# Justice Kimberly S. Budd

## Administered Oath August 24, 2016

Kimberly S. Budd, Associate Justice, was appointed to the Supreme Judicial Court by Governor Charlie Baker. Justice Budd earned her Bachelor's degree in English from Georgetown University, and a law degree from Harvard Law School.

She began her legal career as a law clerk to Chief Justice Joseph P. Warner of the Massachusetts Appeals Court. Justice Budd was a litigation associate at Mintz Levin, before serving as an Assistant United States Attorney in the United States Attorney's Office for the District of Massachusetts in the Major Crimes and Drug Units. After that, she was a University Attorney for Harvard University in the General Counsel's Office. Justice Budd later served as Director of the Community Values program at Harvard Business School.

Justice Budd was appointed as an Associate Justice of the Massachusetts Superior Court by Governor Deval Patrick in 2009. In 2016 she served as the Regional Administrative Justice for Middlesex Criminal Business.

Justice Budd teaches in MCLE and Bar Association programs, is a former adjunct instructor at New England Law, and has taught trial advocacy at Harvard Law School. She is married with two sons.

## Additional Resources

**A photograph of Justice Kimberly S. Budd**

(https://www.mass.gov/doc/a-photograph-of-justice-kimberly-s-budd/download) **(JPG 528.73 KB)**

# Justice Elspeth B. Cypher

## Administered Oath March 31, 2017

Elspeth B. Cypher, Associate Justice, was appointed to the Supreme Judicial Court by Governor Charlie Baker. Justice Cypher was born in Pittsburgh, Pennsylvania, on February 26, 1959. She received a B.A., *magna cum laude*, from Emerson College in 1980 and a J.D., *cum laude*, from Suffolk University Law School in 1986, where she served on the Suffolk University Law Review.

From 1986 to 1988, she was an associate at the Boston law firm of Grayer, Brown and Dilday. In 1988 she became an Assistant District Attorney in Bristol County, where she served for the next twelve years. From 1993 to 2000, she was chief of the Appellate Division of that office and argued many cases before the Supreme Judicial Court and the Appeals Court. In 2000 Governor Paul Cellucci appointed her to the Appeals Court, and she took her seat as an Associate Justice on December 27, 2000.

For many years Justice Cypher was an adjunct professor at Southern New England School of Law (now the University of Massachusetts School of Law – Dartmouth), where she taught courses on legal writing; criminal procedure; criminal law; and women, law, and the legal system. She has participated in numerous educational programs for judges and lawyers and has written extensively about developments in criminal law in Massachusetts. Active in the Massachusetts Bar Association, Justice Cypher has served as co-chair of its criminal law section. She was the recipient of Massachusetts Lawyers Weekly's Lawyer of the Year Award in 2000 for her work in the long running prosecutions of James M. Kater for the murder of Mary Lou Arruda.

In 2012, Justice Kent B. Smith asked her to co-author a fourth edition of his books in the Massachusetts Practice Series, Criminal Practice and Procedure. Before he passed away in October, 2012, she assumed responsibility for the supplement in 2013 and the fourth edition was published in 2014.

## Additional Resources

**A photograph of Justice Elspeth B. Cypher**
(https://www.mass.gov/doc/a-photograph-of-justice-elspeth-b-cypher/download) **(JPG 1.98 MB)**

# Justice Scott L. Kafker

## Administered Oath August 21, 2017

Scott L. Kafker, Associate Justice, was appointed to the Supreme Judicial Court by Governor Charlie D. Baker on August 21, 2017. Prior to this appointment, Justice Kafker served as Chief Justice of the Appeals Court from 2015 to 2017.

Justice Kafker graduated from Amherst College in 1981 and from the University of Chicago Law School in 1985, where he was on the Law Review. After law school, he served as a law clerk to

FEATURED

# Lowy confirmed unanimously to Supreme Judicial Court

State House News Service
Jul 27, 2016



Judge David Lowy is sworn in for a hearing on his nomination to the Supreme Judicial Court before the Governor's Council.
Antonio Caban/SHNS



BOSTON — David Lowy, a Salem Superior Court judge with close ties to Gov. Charlie Baker and others in state government, was confirmed to the Supreme Judicial Court bench Wednesday.

The Governor's Council, which held an eight-hour confirmation hearing for Lowy last week, voted unanimously to confirm him to the state's high court. He was one of Baker's two pending nominees to the SJC. The Governor's Council recently confirmed Justice Frank Gaziano for a seat on the top court.

"I want to congratulate the administration on an outstanding nominee. He is a great jurist and he is going to be a great addition to our Supreme Judicial Court," Councilor Terrence Kennedy said, making the motion to confirm Lowy.

Lowy worked with Baker in the administration of former Gov. William Weld as deputy legal counsel before Weld put him on the district court bench in 1997. The late Gov. Paul Cellucci elevated Lowy to the Superior Court in 2001.

The eight-member elected Governor's Council has now confirmed two of the three nominees Baker has sought to put on the SJC this summer to fill vacancies caused by retirements before the court picks up again in September. The council is expected to hold a confirmation hearing for the third Baker nominee, Peabody native Kimberly Budd, Aug. 3 and vote on her confirmation a week later.

SJC Chief Justice Ralph Gants has expressed the importance of having the new justices seated on the bench before the court opens a new session and begins to hear cases again in the fall.

— *Colin A. Young/SHNS*

# Conversation

FOLLOW

Start the conversation

LOG IN | SIGN UP

ALL COMMENTS

Newest ∨

Start The Conversation

Powered by ⊙ viafoura

Newburyport News Events

Fri, Feb 21        Thu, Feb 13              Thu, Feb 13          Fri, Feb 14          Fri, Fei

📅 See All Events  ➕ Add your event

‹                                                                                    ›

Bruce in the USA          Music at Ipswich Ale          Music Bingo              The Allman Betts Band      Rec.
                          Brewer's Table
Blue Ocean Music Hall     Ipswich Ale Brewer's Table    Plumb Island Beachcoma   Blue Ocean Music Hall      Lane

📅  THU   FRI    SAT   SUN   MON   TUE   WED   THU   FRI   SAT   SUN   MON   TUE
    13    14     15    16    17    18    19    20    21    22    23    24    25

Justice Charles L. Levin of the Michigan Supreme Court, then as a law clerk to Judge Mark L. Wolf of the United States District Court for the District of Massachusetts. In 1987, he joined the Boston law firm of Foley, Hoag & Eliot as an associate. From 1991 to 1993, Justice Kafker was deputy chief legal counsel to Governor William F. Weld. In 1993, he was named chief legal counsel for the Massachusetts Port Authority. He was appointed to the Appeals Court by Governor Paul Cellucci and joined the Court on March 7, 2001. Governor Baker appointed him the sixth Chief Justice of the Appeals Court on July 22, 2015.

Justice Kafker taught state constitutional law at Boston College Law School from 2009 to 2015. He has also served on the Visiting Committee of the University of Chicago Law School. He is the author of book reviews, comments and articles appearing in the University of Chicago Law Review, The Labor Lawyer, Massachusetts Law Review, Michigan State Law Review, New England Law Review, Washington and Lee Law Review, and the Rutgers Law Journal. He served on the Supreme Judicial Court Advisory Committee on the Rules of Civil and Appellate Procedure from 2008 to 2015. He is also a member of the American Law Institute.

## Additional Resources

### A photograph of Justice Scott L. Kafker

(https://www.mass.gov/doc/a-photograph-of-justice-scott-l-kafker/download) (JPG 2.33 MB)

CONTACT

## John Adams Courthouse Contact Information

### Address

1 Pemberton Square, Boston , MA 02108

directions (https://maps.google.com/?q=1+Pemberton+Square%2C+Boston+%2C+MA+02108)

### Phone

Supreme Judicial Court main phone:617-557-1000 (tel:6175571000)
Hours: Mon. - Fri., 8:30 a.m. - 4:30 p.m.

Appeals Court main phone:617-725-8106 (tel:6177258106)
Hours: Mon. - Fri., 8:00 a.m. - 4:30 p.m.

Social Law Library main phone: 617-226-1500 (tel:6172261500)
Hours: Mon.-Fri. 8 a.m.- 8 p.m.

For information on emergency or weather-related closures and delays call:617-557-1000 (tel:6175571000)

RELATED

About the Supreme Judicial Court  (/about-the-supreme-judicial-court)

Supreme Judicial Court Justices order of succession chart from 1801 to
present  (https://www.mass.gov/doc/supreme-judicial-court-justices-order-of-succession-chart-from-1801-to-present)

Supreme Judicial Court Justices' Memorials  (/justices-memorials)

Appeals Court Justices  (/lists/appeals-court-justices)

Did you find what you were looking for on this webpage?

⊙ Yes    ⊙ No

# KAZAROSIAN COSTELLO LLP

## Marsha V. Kazarosian

### PARTNER

**Location:** Haverhill, Massachusetts
**Phone:** 978 372-7758 Ext. 121
**Fax:** 978 372-9299
**Email:** marsha@kazcolaw.com



**Admitted in MA (1982) and NH (1990), US District Court for MA and NH, First Circuit Court of Appeals, and US Supreme Court.**
**Concentrating in Civil Rights Litigation, Personal Injury and Divorce and Family Law.**



HOME     ATTORNEYS     PRACTICE AREAS     MEDIA     CONTACT & DIRECTIONS

## MARSHA V. KAZAROSIAN

**Admitted in MA (1982) and NH (1990).**
**Concentrates in Personal Injury, Divorce and Family Law, and Discrimination Law.**






Currently President-Elect of the Massachusetts Bar Association, Marsha V. Kazarosian, has been named by Massachusetts Super Lawyers magazine as one of the top lawyers in Massachusetts for the sixth consecutive year. She has been identified as one of the top 50 Women Lawyers in MA and New England, one of the top 100 Lawyers in MA, and a Super Lawyer in both Family Law and Personal Injury Litigation by Law & Politics. In 2006, she was the Massachusetts Super Lawyers magazine's cover story, featuring her career biography and her climb to national recognition. Attorney Kazarosian also has a 10.0 Superb rating from AVVO.com.

Attorney Kazarosian has been selected for the Top Women Attorneys in Massachusetts list being featured in the April 2013 issue of Boston magazine based on her inclusion in the 2012 Super Lawyers® list (Super Lawyers is a registered trademark of Key Professional Media, Inc.).

In September 2011, Massachusetts Lawyers Weekly publication identified Attorney Kazarosian as a "Top Woman in the Law" in the Commonwealth, and named her as one of Massachusetts' Top Ten lawyers, noting that she obtained one of the ten highest jury verdicts in the Commonwealth in 1999. Attorney Kazarosian has also achieved a Martindale Peer Review Rating of AV Preeminent. Over the past two decades she has built a national practice representing clients in high profile media cases, making case law with precedent-setting issues in areas such as gender and disability discrimination, and police excessive force/civil rights litigation in the Federal Court. Since 1983, Attorney Kazarosian has developed a wide range of expertise in the areas of SEC Whistleblower Retaliation, discrimination, divorce and family law, and criminal and civil litigation. She is an experienced mediator and conciliator in the Superior, Probate and District Courts dealing with such issues as contract disputes, personal injury, and lender liability.

In 1999, Attorney Kazarosian and her associate, Janet E. Dutcher, Esquire, successfully sued the Haverhill Golf and Country Club for gender discrimination. This was the first case of its kind to go to trial in the country, winning a multi-million dollar verdict. As a result of much post-trial litigation and appeals that reached the highest court in the Commonwealth, their victory in Borne, et al. v. Haverhill Golf and Country Club, Inc. became a landmark case in the nation for gender discrimination in a country club/membership based setting.

https://www.salemnews.com/news/state_news/salem-judge-tapped-for-sjc-vacancy/article_6f1b406e-dd81-59c6-80c8-3f3026925f60.html

FEATURED

# Salem judge tapped for SJC vacancy

Lowy praised for intellect, work ethic -- and patience

BY CHRISTIAN M. WADE and JULIE MANGANIS STAFF WRITERS
Jun 14, 2016



CHRISTIAN WADE/Staff photoJudge David Lowy speaks at the podium during Gov. Charlie Baker's announcerr nominees to the Supreme Judicial Court. At left is Judge Frank Gaziano, who was also nominated, and on the ri; Karyn Polito and Baker.

 

BOSTON — Gov. Charlie Baker on Tuesday tapped Salem Superior Court Judge David Lowy to fill a vacancy on the Supreme Judicial Court — one of several nominations by the Republican governor that will reshape the state's highest court.

Lowy, of Marblehead, was nominated with two other judges Tuesday at a press conference at the Statehouse in Boston. The others were Suffolk Superior Court judges Kimberly Budd and Frank Gaziano.

"These nominees have all demonstrated measured and fair temperament and outstanding legal knowledge and skills throughout their careers," Baker told reporters. "They have demonstrated every day that they are judges of the highest caliber."

Lowy worked with Baker in the administration of former Republican Gov. William Weld, as deputy legal counsel. Weld appointed Lowy to the District Court bench in 1997; the late Gov. Paul Cellucci elevated him to the Superior Court in 2001.

"I'm keenly aware of how few people have been provided with the opportunities that I've had since birth," Lowy, a Peabody native, said Tuesday, recalling how his family emigrated to the United States in the late-1930s from Eastern Europe.

"Empathy, humility and reverence for the law will guide me every day if I'm confirmed," he added.

Lowy has presided over dozens of major cases, including the trial of Phillip Chism, a Danvers teen convicted in the 2013 rape, robbery and murder of Colleen Ritzer, his math teacher at Danvers High School.

**Grace under pressure**

It was the sort of moment that could make even the most seasoned judges lose their cool.

After weeks of delays in a high-profile murder trial and a Herculean effort to resolve the issue that led to those delays, it appeared the problem had been resolved — only for another potential issue to arise.

On that March morning, Judge Lowy, 56, maintained his composure, however.

"I'm just breathing in, saying 'calm' and breathing out, saying 'patience,'" Lowy said.

It's that kind of grace under pressure and a fierce intellect that current and former colleagues and others cited again and again as they reacted to the governor's nomination of Lowy to the state's highest court on Tuesday.

Lowy has "tremendous judicial comportment," said Essex District Attorney Jonathan Blodgett.

Prior to the trials of two men charged in the brutally violent attempted robbery and murder of an Ipswich restaurant owner earlier this year — trials that were beset by delays due to a shortage of interpreters and other issues — Lowy presided over one of the most-watched cases in state history, that of Danvers teen Philip Chism.

For months before the trial got underway, Lowy prepared meticulously, organizing a meeting with members of the media to brief them on courtroom decorum, and keeping all the lawyers moving forward with their own trial preparation in a series of pre-trial hearings.

Despite all that preparation, there were challenges — in the midst of jury selection, Chism decided one day he would not come out of his holding cell in the courtroom, leading to a nearly month-long delay in the trial while the teen was evaluated; last-minute efforts by the defense to introduce evidence; and then the judge was forced to kick out a video camera for violating his order about photographing jurors.

**'Steady, consistent, reliable'**

But Lowy's equally known for his vast knowledge of the law. He co-edited, along with Appeals Court Judge Peter Agnes, the Massachusetts Guide to Evidence, the "bible" for trying cases in this state. And he teaches the subject at Boston University School of Law.

"He's just been a very steady, consistent, reliable judge," Blodgett said, recalling Lowy's work on both the Chism trial and the two that followed in the Ipswich murder.

"I think he is really, in all respects, everything you would hope for somebody that is being nominated for an appointment to the Supreme Judicial Court," said Chelsea defense attorney Randy Chapman, a longtime friend of Lowy's since their days as prosecutors in the Essex DA's office.

Retired Superior Court Judge Howard Whitehead of Topsfield started out as Lowy's mentor on the bench after he was elevated from district to superior court in 2001.

"It kind of turned around after a few years," Whitehead said. "I learned so many things from him, starting with case management, and some pretty substantive law."

Lowy, said Whitehead, has "limitless intellectual energy."

"He has a practical command of the law but also an intellectual one," said Whitehead. "On the Superior Court he was the go-to person for any area of the law."

But he also "has an appreciation for all aspects of the human condition," added Whitehead.

Chapman said Lowy's life's experiences helped shape him as a judge. "He wasn't raised with a silver spoon in his mouth. He's someone who can relate to the average person."

**'Calling balls and strikes'**

Lowy grew up in Peabody, where his father, Dr. Marvin Lowy, was a dentist until Parkinson's forced him into an early retirement. Dr. Lowy was an immigrant who had fled with his family from Czechoslovakia as Hitler's army began its occupation.

Lowy attended the Burke School and then Peabody High. He got a job hawking hot dogs in the stands at Fenway Park, working every season for 13 years, through his years at UMass Amherst and later, Boston University School of Law.

He frequently tells lawyers and juries that he sees his role as a judge as similar to that of an umpire, "calling balls and strikes." He also frequently stands during court sessions, moving a standing desk next to the judge's bench in his courtroom so he can continue to take notes.

Lowy worked for the Boston law firm Goodwin, Proctor and Hoar and then was a law clerk to U.S. District Court Judge Edward Harrington before joining the Essex District Attorney's office in 1990.

A couple of years later, still in his 30s, he was hired by then-Gov. William Weld as legal counsel, at the urging of Robert Cordy — one of the justices he's now potentially replacing.

Along the way, he got married to Virginia Buckingham, at the time Weld's press secretary and later chief of staff. They have two children, Jack and Maddy.

He later returned to prosecuting cases, this time in the Suffolk County district attorney's office, where he worked in the gang unit, before he was named to his first judgeship, in district court, in 1997.

In Lynn, Lowy presided over the court's new "drug court," at the time one of the first of its kind in the state.

"I think across the board everybody looks at Judge Lowy as being fundamentally fair, with a good heart," said Chapman. "There is no one who works harder."

He's also brave, added Chapman.

"If you just took the Chism case, that's a case that obviously was extremely emotional on both sides and very difficult for everybody involved, and he presided over it with sensitivity and with insight," said Chapman, who watched the trial and provided commentary. "I mean, he threw out a confession in the case. I think that showed the level of courage he has ... about applying the law dispassionately and fairly."

## Reshaping the court

The anticipated retirement of three Supreme Judicial Court justices this year – with another two more expected next year – gives Baker a rare opportunity to reshape the court before the end of his first term.

Justices Cordy, Francis Spina and Fernande Duffly have all announced plans to retire this summer. And next year, Justices Margot Botsford and Geraldine Hines turn 70, the mandatory retirement age for judges.

"It's rare for a governor in his first term to have this amount of turnover on the court," said Martin W. Healy, chief counsel for the Massachusetts Bar Association.

Healy said Baker's choices for the high court, which were picked by a 12-member nominating commission, are "impressive" and reflect "trial-tested judges who have proven their mettle in court" both from the bench and as lawyers.

Baker's nominations will be vetted by the eight-member Governor's Council, which reviews judicial appointments.

Baker said Tuesday he wants to make nominations early enough to give the council time to review the nominees, hold hearings and vote on their confirmation before the new session of the court begins in September.

Terrance Kennedy, an Everett attorney and veteran member of the Governor's Council, said he has appeared before all three judges over the years and "wasn't disappointed" in Baker's picks. He praised all three as "very intelligent and hard-working people" who handled many complicated cases in their careers.

Baker told reporters Tuesday he wants his judicial legacy to be one of upholding the "ideals of the (high court's) original mission."

 **BAR**  (/)

MENU



MBA News
(/mba-news)


Events
(/events)


Resources
(/resources)


Login
(/member-profile/login)

Membership

Education

Publications

Advocacy

Public

*Join the MBA (/join-the-mba)*

Search 🔍

Home (/) / Publications (/publications) / Section Review (/publications/section-review)

# Section Review

## News From The Courts

Thursday, Apr. 7, 2011

( Return ↩ )   ( Print This Article 🖨 )

### MBA applauds nomination of Barbara A. Lenk as SJC associate justice



The Massachusetts Bar Association is pleased that Gov. Deval Patrick has nominated Appeals Court Associate Justice Barbara A. Lenk to the Supreme Judicial Court. Lenk would fill the vacancy created by the retirement of Associate Justice Judith A. Cowin.

"Justice Lenk has stood out among appellate judges as a brilliant intellect. Her opinions and writings have been consistently relied on and most cited by the Supreme Judicial Court," MBA President Denise Squillante said. "Justice Lenk's personal experiences and nontraditional family background will bring much needed empathy to the court as it grapples with the growing complex and diverse societal issues facing the bench. Litigants and the public will have a jurist that profoundly understands their struggles."

A long-time MBA member, Lenk previously served on the MBA's Judicial Administration Section Council. Lenk was appointed to the Appeals Court in 1995 by Gov. William Weld, who had appointed her to the Superior Court two years earlier. Previously, Lenk was a partner at Brown, Rudnick, Freed & Gesmer (now Brown Rudnick Berlack Israels), where she began her legal career in 1979. She is a Trustee of Western New England College and a member of the Boston Inn of Court.

"A court that makes its decisions based on the rule of law, gives everybody the hearing they deserve, and treats everyone with the level of respect and decency that the role demands," he said.



Governor Baker nominates three to Supreme Judicial Court

Jun 14, 2016

Attorney Kazarosian continues to fight against gender discrimination and has affirmed her stature as a leading litigator in discrimination cases.

In addition to protecting the rights of women and minorities in membership-based club settings, Marsha continues to fight sexual harassment in the workplace. She has also defended clients accused of discrimination. In 2001, she defeated claims of disability discrimination against the manager of a racquetball club who was sued under the Americans with Disabilities Act in the case of Kuketz v. Petronelli.

Attorney Kazarosian has also been involved in a number of high profile criminal cases, including one in which she defended a member of the Hells Angels Motorcycle Club in multiple federal criminal indictments. In 1990, she represented one of the three young defendants in the Pamela Smart murder case. Thereafter, she filed suit on behalf of all the boys in an innovative civil action against the Winnacunnet High School for negligent supervision of Pamela Smart. The national attention of the murder case inspired tremendous media coverage including two movies, one with Helen Hunt entitled Murder in New Hampshire, the Pamela Smart Case, and one with Nicole Kidman entitled To Die For. Attorney Kazarosian also appeared in the Oxygen Network series Snapped on the episode about Pamela Smart. It has also been the subject of an episode of American Justice.

Attorney Kazarosian is past President of the Massachusetts Academy of Trial Attorneys (MATA). Most recently she was elected President-elect of the Massachusetts Bar Association. She was recently appointed to serve on the Supreme Judicial Court's Access to Justice Commission's Committee on the Bar Examination, and is a Trustee of the Massachusetts Bar Foundation and Massachusetts Continuing Legal Education. In 2011 she co-Chaired the Committee for the MBA's Centennial Celebration that was held in June, 2011. In June, 2002, she became the second female President in the history of the Essex County Bar Association, the oldest bar association in the nation. She has also served a two year term as one of twenty-five lawyers in the Commonwealth appointed to the Massachusetts Supreme Judicial Court's Pro Bono Panel, and a six year term as a Hearings Committee Officer for the Massachusetts Board of Bar Overseers.

In April 2005, Marsha debuted as the host of her own internet radio program called The Power of Attorney with Marsha Kazarosian on the Legal Talk Network, in which she and her guests discuss relevant legal issues as they unfold in our everyday lives. The shows are available for listening and downloading at The Power Of Attorney With Marsha Kazarosian.

Attorney Kazarosian is active in the continuing legal education for lawyers in both MA and NH, and teaches courses in for MCLE, MBA, and MATA. She has also spoken for national organizations such as The American Association for Justice, (formerly ATLA).

Attorney Kazarosian has frequently spoken at various organizational events, both nationally and within the MA and NH communities, including the 15th Annual NCWP Leadership Training Conference 2010, Feminist 2000 National Convention in Baltimore, MD, the Hye Achievers for the 21st Century, and the 11th Annual Armenian Bar Association meeting held in Washington, D.C.

In addition to the time that she invests in the community and in bar associations, Attorney Kazarosian shares her commitment to youth and the law by serving regularly as a Mock Trial Judge for high school, college, and law school students for Boston University, Boston College, Suffolk University, AAJ, ABA, and the MBA's High School Mock Trial Competitions. She has also been the keynote speaker at the graduation ceremonies for North Shore Community College's graduating Criminal Justice students.

She has authored several articles and legal treatises for West Publishing, Massachusetts Continuing Legal Education (MCLE), MATA, and others, including a treatise for West's Causes of Action series entitled "Cause of Action Against Private Clubs or Associations for Sex Based Discrimination," (West Publishing Co. 2002). Her articles include, but are not limited to, "Where's the Risk," where she discusses insurer fraud and the New Orleans disaster, and "Whatever Happened to the Right to a Fair Trial," published in the Boston Business Journal.

## Admissions

- United States District Court, District of Massachusetts (June 1992)
- United States District Court, District of New Hampshire (December 1990)
- New Hampshire Bar (October 1990)
- United States Supreme Court Bar (May 1986)
- Massachusetts Bar (June 1982)

## Appointments and committees for Marsha include

- Massachusetts Academy of Trial Attorneys, Past President (2006-2007), Board of Governors

- Massachusetts Bar Association, President-Elect (2013-2014), Secretary (2010-2011) and Vice President (2008-2009 and 2011-2012)
- American Bar Association, Delegate (2013-present)
- Massachusetts Continuing Legal Education, Trustee (2012-Present)
- Massachusetts Bar Association, current and prior appointments include Executive Management Board, Joint Committee on Judicial Appointments, Essex County Delegate, Family Law Section Council, MBA and ABA Nominating Committees, Probate Law Section Council, Civil Litigation Section Council, Access to Justice, etc.
- Anti-Crime Summit Committee (2005)
- New England Bar Association, Governor (2010-2013)
- MBA Nominating Committees (2002-2008)
- Corporator of Pentucket Five Cents Savings Bank (1992 to Present)
- Massachusetts Bar Foundation, Trustee (2012-present), Life Fellow (1993 to Present)
- Board of Editors, Massachusetts Lawyers Weekly (2005-2006)
- Essex County Bar Association, President (2002-2004), Vice President (2000-2002), Treasurer (1998-2000), Secretary (1996-1998)
- Northern Essex Community College Foundation, Board Member (2003)
- SJC Pro Bono Committee (2000-2002)
- The Board of Bar Overseers, Hearings Committee (1993 to 1999)
- Essex County Superior Court, Conciliator (1993 to 1999)
- CJA Panel, U.S. District Court, District of NH (1991 to 1997)
- Essex County Bar Advocates, Mentor and & CLE Faculty Member (1992 to 1997)
- Committee for Public Counsel Service (CPCS) Appeals Advocate, Commonwealth of Massachusetts (1992 to 1998)
- Superior Court Advocates, Essex County Bar Advocates (1992 to 1997)
- Bar Advocate, Essex County Bar Advocates (1982 to 1992)

Website by Community Communications, Inc.